IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
June 23, 2011 Session

# METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY v. DAVID DOUGLAS OLLIS

**Appeal from the Circuit Court for Davidson County**
**No. 09C3487     Joseph P. Binkley, Jr., Judge**

---

**No. M2010-02046-COA-R3-CV - Filed July 22, 2011**

---

Driver of a sedan was given citations for not having the certificate of public convenience and license necessary to operate a taxicab. The citations were upheld by the general sessions and circuit courts. Driver appeals, claiming that his sedan is not a taxi and that the lower courts did not have jurisdiction to hear the matter. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and RICHARD H. DINKINS, J., joined.

David Douglas Ollis, Nashville, Tennessee, Pro Se.

James William Jefferson Farrar, Andrew David McClanahan, and Raleigh Alexander Dickerson, Nashville, Tennessee, for the appellee, Metropolitan Government of Nashville and Davidson County.

**OPINION**

The facts in the record of this appeal are sparse but uncontroverted. On December 31, 2008, David Douglas Ollis was issued two citations for violations of the Metropolitan Code. Citation MC110061 was issued for violating Metro Code § 6.72.100, which requires all taxicab drivers to operate with a driver's permit. Citation MC110062 was issued for violating Metro Code § 6.72.020, which requires all taxicab drivers to operate with a certificate of public convenience and necessity. The testimony of Inspector Milton Bowling indicates that Mr. Ollis's Lincoln Town Car was parked in a taxi line at a taxi stand. The car

had a front vanity plate that read "T.A.X.I."[1]  According to Mr. Ollis's reply brief, the car was unmarked,[2] had no taximeter,[3] and had no toplight.[4]

The general sessions court found that Mr. Ollis violated both ordinances and fined him fifty dollars for each violation.  He appealed to the circuit court, which found that he was operating a taxicab in violation of the two ordinances for which he was cited.  He appealed to this court.

Mr. Ollis presents the interesting issue of whether his vehicle was a taxi, which is regulated by Metro, or a sedan, which at the time of the citations was not regulated by Metro. In 1985, the legislature enacted the "Tennessee Passenger Transportation Services Act," Tenn. Code Ann. § 7-51-1001 *et seq*.  The act states that:

> Every municipality, or other governmental entity, is hereby expressly authorized and empowered to protect the public health, safety, and welfare by licensing, controlling, and regulating by ordinance or resolution each private passenger-for-hire vehicle providing transportation services operated within the jurisdiction of the municipality or other governmental entity.

Tenn. Code Ann. § 7-51-1003(a).  In particular, Tenn. Code Ann. § 7-51-1007(a) empowers Metro "to regulate entry into the business of providing passenger transportation service, including, but not limited to, limousine, sedan, shuttle and taxicab service."  Tenn. Code Ann. § 7-51-1007(b)(2) defines "sedan" as

> any motor vehicle, except a limousine or taxicab, designed or constructed to accommodate and transport passengers for hire, that does not have an extended wheel base or an expanded seating capacity designed for the transport of persons. The vehicle will have no additional rear seating capacity, area or comforts; shall be designed to transport not more than five (5) passengers, exclusive of the chauffeur/driver, and the principal operation of which is

---

[1]According to Mr. Ollis's reply brief, "T.A.X.I." stands for his company's name, "Tennessee Airport Xpress Independent."

[2]Metro Code § 6.72.200 requires each taxicab to have the name of the company in painted letters on each front door.

[3]Metro Code § 6.72.265 requires all taxicabs to be equipped with taximeters.

[4]Metro Code § 6.72.410 requires all taxicabs to be equipped with a toplight.

confined to the area within the corporate limits of cities and suburban territory adjacent to the cities, and not operated on a fixed route or schedule[.]

Tenn. Code Ann. § 7-51-1007(b)(4) defines "taxicab" somewhat differently:

"Taxicab" means any motor vehicle except a limousine or sedan designed or constructed to accommodate and transport passengers for hire, not more than nine (9) in number, exclusive of the driver, and the principal operation of which is confined to the area within the corporate limits of cities and suburban territory adjacent to the cities, and not operated on a fixed route or schedule.

These definitions contain significant overlap. The main differences are that a sedan cannot have an extended wheel base, expanded seating capacity for passengers, additional rear seating capacity, area or comforts, and can transport no more than five passengers. A taxicab is not prohibited from having these additional features and can carry up to nine passengers.

Metro's ordinance further defines "taxicab" to mean "a motor vehicle regularly engaged in the business of carrying passengers for hire, donation, gratuity or any other form of remuneration, having a seating capacity of less than nine persons and not operated on a fixed route." Metro Code § 6.72.010. As previously noted, Metro requires taxicabs to prominently display the company name and be equipped with taximeters and toplights.[5]

Mr. Ollis claims his sedan is not a taxicab and points to the absence of the required features of taxicabs as proof. It is not just the type of vehicle and its accouterments that make a vehicle a taxicab,[6] however, but how it acts as well. Mr. Ollis was using his sedan as one would use a taxicab. It was in a line of taxis at a taxicab stand. A "taxicab stand" is defined as "a place alongside a street, or elsewhere, where the metropolitan transportation licensing commission has authorized a holder of certificate of public convenience to park for picking up or discharging passengers." Metro Code § 6.72.010. Using a taxi stand when the vehicle is not a taxi is prohibited: "Private vehicles, taxicabs not in service or other vehicles for hire shall not at any time occupy the space upon the streets that have been established as taxicab stands." Metro Code § 6.72.300.

_____

[5]*See* footnotes 2, 3 and 4, *infra*.

[6]We note that it is beyond the possibility of coincidence that Mr. Ollis chose a company name whose initials spelled out the word "taxi."

Given the facts of this case, we conclude that the inspector was well within his authority to cite Mr. Ollis for not having a taxicab driver's permit or a certificate of convenience.

Mr. Ollis also maintains that the general sessions and circuit courts did not have jurisdiction to hear his case. Tenn. Code Ann. § 7-3-311(f) allows a metropolitan charter to provide for the general sessions courts in the county to hear cases arising under the metropolitan ordinances. The Charter of the Metropolitan Government of Nashville and Davidson County provides for such jurisdiction. Metro Charter, Article XIV, § 14.02. Circuit courts have the authority to hear appeals from general sessions courts. Tenn. Code Ann. § 27-5-108(a). Both the general sessions and circuit courts had jurisdiction to hear this case.

Mr. Ollis claims that the fact that he refused to sign the citation deprived the court of the jurisdiction to hear his case. In effect, Mr. Ollis argues that he should have been placed under arrest pursuant to Tenn. Code Ann. § 7-63-104.[7] This would have resulted in the procuring of a warrant, booking and either bail or jail. *Id*. The statute does indeed indicate that there is a duty to arrest a person who refuses to sign the citation, and it has been so interpreted. Tenn. Op. Att'y. Gen. 06-167 (2006); 94-069 (1994).[8]

Tenn. Code Ann. § 7-63-104, enacted in 1969, is not, however, the end of the analysis. The citation was issued under Tenn. Code Ann. § 7-3-501 *et seq*.[9], enacted in 1993. Pursuant to Tenn. Code Ann. § 7-3-503, the citation may be served on the individual at the time the ordinance is violated. That is what occurred in this case. Tenn. Code Ann. § 7-3-501 *et seq*. contain no requirement for a signature. In addition, the only mention of arrest in Tenn. Code Ann. § 7-3-501 *et seq*. applies when the violator fails to produce identification for the purpose of issuance of the citation. See Tenn. Code Ann. § 7-3-505. The citation was properly issued.

---

[7]It is among the rarest of instances when someone actually argues he should have been arrested.

[8]While not binding on the courts, opinions of the Tennessee Attorney General are "persuasive," *Whaley v. Holly Hills Mem. Park, Inc*., 490 S.W.2d 532, 533 (Tenn. Ct. App. 1972), and "entitled to considerable deference." *State v. Black*, 897 S.W.2d 680, 683 (Tenn. 1995).

[9]We can tell this is so because the citation contains the language required by Tenn. Code Ann. § 7-3-502 for citations issued pursuant to this part of the code.

The circuit court is affirmed. Costs of appeal are assessed against Mr. Ollis, the appellant, for which execution may issue.

_____
ANDY D. BENNETT, JUDGE